Eric D. Wilson, OSB #044556
ewilson@oregonemploymentlaw.com
Eric Wilson, P.C.
1 SW Columbia Street, Suite 1850
Portland, Oregon 97258
Phone:  503.880.9372
Fax:  503.208.8026

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KATELYN WOLFE, an individual,<br><br>  Plaintiff,<br><br>  v.<br><br>HANNAH'S LLC d/b/a HANNAH THE PET SOCIETY, an Oregon limited liability company,<br><br>  Defendant. | Case No. 3:19-CV-329<br><br>**COMPLAINT**<br><br>1. Failure to Pay Wages, Unpaid Overtime, Liquidated Damages, and Attorneys' Fees Under the FLSA - 29 U.S.C. § 201 *et seq*.<br>2. Failure to Pay Wages, Unpaid Overtime, Penalty Wages, and Attorneys' Fees Under Oregon Law – ORS Chapters 652 and 653<br>3. Injured Worker Retaliation- ORS 659A.040<br><br>**DEMAND FOR JURY TRIAL** |

For her Complaint, Plaintiff, Katelyn Wolfe, alleges as follows:

### I. **JURISDICTION, VENUE AND PARTIES**

1. This Court has jurisdiction over the subject matter of Plaintiff's Fair Labor Standards Act (FLSA) claims for violation of 29 U.S.C. § 206(a), § 207(a)(1) and § 215(a) pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1342; this Court also has jurisdiction over Plaintiff's state-law claims under the doctrine of supplemental jurisdiction, 28 U.S.C. §1367.

2. Defendant Hannah's LLC d/b/a Hannah The Pet Society (referred to herein as "HANNAH THE PET SOCIETY"), is a domestic limited liability company created under the laws of the State of Oregon that has its principal place of business in Multnomah County, Oregon.

3. At all material times, HANNAH THE PET SOCIETY conducted regular, sustained, and substantial business activities in Multnomah County, Oregon.

4. Plaintiff is a resident of Multnomah County, Oregon, who, at all material times, was employed by HANNAH THE PET SOCIETY in Multnomah County, Oregon.

5. All or substantially all of the acts and omissions alleged herein occurred in Multnomah County, Oregon.

6. HANNAH THE PET SOCIETY is vicariously liable for the acts of its agents and employees who were acting within the course and scope of their employment with HANNAH THE PET SOCIETY, including all acts and omissions alleged herein.

## II. STATEMENT OF FACTS

7. HANNAH THE PET SOCIETY hired Plaintiff to work as a Groomer at its SE Washington Street location beginning on or around March 1, 2017.

8. At all material times, HANNAH THE PET SOCIETY paid Plaintiff as an independent contractor—which means HANNAH THE PET SOCIETY did not pay Plaintiff time-and-a-half wages when she worked more than 40 hours per week and did not pay Plaintiff <u>at all</u> for work she performed for HANNAH THE PET SOCIETY outside of her grooming duties.

9. In fact, throughout her employment, Plaintiff was misclassified as an independent contractor when she was actually an "employee" of HANNAH THE PET SOCIETY, which was her "employer," as those terms are defined and interpreted under federal and Oregon law.

10.  Throughout Plaintiff's employment, HANNAH THE PET SOCIETY exercised a high degree of control over Plaintiff that.  This control included, but was not limited to: booking her appointments, requiring Plaintiff to follow its written policies and procedures, setting the price for Plaintiff's services, setting the commissions Plaintiff received for her work, not allowing Plaintiff to refuse clients, imposing a dress code on Plaintiff, setting Plaintiff's schedule, limiting the time and days Plaintiff could take off, mandating that Plaintiff perform work on behalf of HANNAH THE PET SOCIETY outside of her grooming duties, providing refunds to Plaintiff's clients without consulting Plaintiff, providing Plaintiff with a company email address and required her to use that address to correspond about work issues, maintaining control over all of Plaintiff's client files and contact information, and employing an on-site manager who regularly provided Plaintiff with direction and feedback and controlled Plaintiff's day-to-day activities.

11.  HANNAH THE PET SOCIETY controlled the method of payment for Plaintiff's work.  Specifically, all grooming clients paid HANNAH THE PET SOCIETY a price that was fixed solely by HANNAH THE PET SOCIETY and Plaintiff was then paid a set commission per job that was fixed by HANNAH THE PET SOCIETY.

12.  HANNAH THE PET SOCIETY furnished much of Plaintiff's equipment, Plaintiff performed her work at a facility owned and operated by HANNAH THE PET SOCIETY, and Plaintiff was prohibited from grooming customers who were not customers of HANNAH THE PET SOCIETY at the company's facility.

13.  Plaintiff's position was not limited in duration, was not subject to a contract of renewal that required periodic review, and, at all times, HANNAH THE PET SOCIETY retained the right to terminate Plaintiff without cause and without notice (subject to state and federal wage and hour laws and employment discrimination laws).

14. As a Groomer, Plaintiff's work duties were an integral part of HANNAH THE PET SOCIETY's business. Specifically, Grooming services are one aspect of pet ownership that HANNAH THE PET SOCIETY provides to its customers.

15. Plaintiff's position required the technical skills of a Groomer, but her position did not require her to rely on any business skills to perform her work—her appointments were set by HANNAH THE PET SOCIETY, and she was restricted to grooming for HANNAH THE PET SOCIETY customers.

16. Plaintiff performed services only as determined by HANNAH THE PET SOCIETY, her pay and commissions were set by HANNAH THE PET SOCIETY, she was not responsible for any of her own bonds or insurance, and she was not allowed to independently advertise or promote her services—such that her opportunity for profit and loss was determined by HANNAH THE PET SOCIETY.

17. In June 2018, Plaintiff learned after discussions with other employees that HANNAH THE PET SOCIETY had misclassified her as an independent contractor. In fact, on information and belief, HANNAH THE PET SOCIETY had previously employed one or more groomers as W-2 employees, before changing them to independent contractor status during 2016 or 2017.

18. Thereafter, in or around July 2018, Plaintiff sent an email to Amie Davis, a supervisory employee at HANNAH THE PET SOCIETY on behalf of herself and another Groomer—Hannah Norman.

19. Plaintiff's email read, "Hello Amie, Hannah and I have recently come into some information regarding our current position as Independent Contractors with Hannah the Pet Society. We have found out that the way grooming is currently being run it illegal. We would like to work together, moving forward, in getting things legal."

20. Following this formal complaint about her employment status, Plaintiff was contacted by Francesca, a Human Resources employee for HANNAH THE PET

SOCIETY. The two had a conversation during which Francesca asked Plaintiff if she wanted to be an employee and not an independent contractor. Plaintiff confirmed that, yes, she believed she was an employee and that she wanted to be classified as such.

21. Thereafter, Francesca contacted Plaintiff and explained that Plaintiff's request to be an employee had been denied by Fred Wich, the company's owner.

22. Without any change to her status, Plaintiff continued her work as a Groomer for HANNAH THE PET SOCIETY. On or around October 3, 2018, HANNAH THE PET SOCIETY scheduled Plaintiff to groom a cat who appeared particularly skittish. Plaintiff had in the past asked if she could sedate animals whom she believed posed a safety risk, and her requests had always been denied. On the day in question, Plaintiff was grooming the cat when the cat attacked her and bit Plaintiff's hand.

23. Plaintiff immediately told her supervisor, Holly, what had happened. Holly brought Plaintiff paperwork to initiate an incident report. As Plaintiff was completing this paperwork another manager told Plaintiff and Holly that the paperwork did not apply to Plaintiff because she was an independent contractor and thus not covered under HANNAH THE PET SOCIETY's workers' compensation insurance. Holly made a phone call and then confirmed to Plaintiff that she was not covered by HANNAH THE PET SOCIETY's insurance. This disclosure was deeply upsetting to Plaintiff, who did not have any insurance of her own. Holly advised Plaintiff to go home and ice the bite and check in later that day. At home, the bite was painful and Plaintiff let Holly know she would need to be off work for at least two days.

24. By October 5, 2018, the bite had become worse and Plaintiff was forced to go to urgent care. At urgent care, she was diagnosed with an infected tendon due to the cat bite and ordered off work. Also at urgent care, Plaintiff completed workers' compensation paperwork related to her injury and treatment—per a request from her physician.

25.  Plaintiff notified Holly that same day that she had filed a workers' compensation claim for her injury and that she would need to miss additional time. In response, Holly again emphasized that Plaintiff was not eligible for workers' compensation. Plaintiff returned to urgent care the following day and was told that the antibiotics she had been prescribed were helping and that she could return to work in a few days. Plaintiff then informed Holly she could return to work on October 10, 2018, but that she would need to handle fewer appointments while she healed.

26.  Plaintiff worked at HANNAH THE PET SOCIETY on light duty on October 10, 12 and 13. Plaintiff was then off work for two days per her normal schedule. On October 15, 2018, Holly asked to meet with Plaintiff in person.

27.  When Plaintiff arrived for this meeting she was terminated. In terminating Plaintiff, Holly explained that Plaintiff was "not a good fit" for the company. Plaintiff was stunned as she had not received any write-ups or disciple during her employment and she had not been told that there were any issues that she needed to correct.

28.  The termination was out-of-the-blue following a year-and-a-half of employment, and came just days after Plaintiff was injured on the job, missed work due to her injury, filed for workers' compensation, and asked for light-duty work while she healed from her on-the-job injury.

**FIRST CLAIM FOR RELIEF**
**UNPAID WAGES, UNPAID OVERTIME, LIQUDATED DAMAGES, AND ATTORNEYS' FEES UNDER THE FLSA – 29 U.S.C. § 201** *et seq*.

29.  Plaintiff restates and incorporates by reference paragraphs 1-21, as though fully set forth herein.

30.  At all material times herein, Defendant was an "employer" within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*.

31.  At all material times herein, Defendant was "an enterprise engaged in

commerce" under the FLSA.

32. At all material times herein, Defendant's annual gross revenue was over $500,000 per year.

33. The FLSA requires employers to compensate employees for all work performed on behalf of their employer and further requires that all non-exempt employees be compensated at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of forty hours per week.

34. Throughout her employment with Defendant, Plaintiff was misclassified as an independent contractor when, in fact, she was an "employee" and Defendant was her "employer"—as those terms are defined and interpreted under the FLSA.

35. As a result of Plaintiff's misclassification, Defendant did not pay Plaintiff time-and-a-half wages when she worked more than 40 hours per week and did not pay Plaintiff <u>at all</u> for duties Plaintiff performed outside of her grooming duties, including considerable time Plaintiff was required to spend cleaning Defendant's premises.

36. As a result of Defendant's failure to compensate Plaintiff at a rate of not less than 1.5 times her regular rate of pay for work performed in excess of forty hours per work week, Defendant violated the FLSA, including 29 U.S.C. § 207(a)(1) and § 215(a).

37. As a result of Defendant's failure to compensate Plaintiff at all for work Plaintiff performed outside of her grooming duties on Defendant's behalf, Defendant violated the FLSA, including, but not limited to, 29 U.S.C. § 206.

38. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(A).

39. Under the FLSA, Plaintiff is entitled to damages in the amount of her unpaid wages and unpaid overtime wages from March 1, 2017 through October 15, 2018, with said amount to be determined by a jury at the time of trial.

40. In addition, given Defendant's willful violation, Plaintiff is entitled to

liquidated damages as provided by the FLSA, 29 U.S.C. §216(b), in an amount equal to her unpaid wages and unpaid overtime from March 1, 2017 through October 15, 2018, with said liquidated damages to be determined by a jury at the time of trial.

41. Plaintiff requests attorney's fees and costs associated with this claim pursuant to the FLSA, 29 U.S.C. §216(b). Plaintiff presented a written demand for unpaid wages and liquidated damages under the FLSA to Defendant via a letter dated January 22, 2019. Defendant failed to tender any of the money owed to Plaintiff following its receipt of Plaintiff's written demand.

## SECOND CLAIM FOR RELIEF
### UNPAID WAGES, UNPAID OVERTIME, PENALTY WAGES, AND ATTORNEYS' FEES UNDER OREGON LAW

42. Plaintiff restates and incorporates by reference paragraphs 1-21, as though fully set forth herein.

43. Oregon law requires employers to compensate employees for all work performed on behalf of their employer and further requires that all non-exempt employees be compensated at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of forty hours per week.

44. Throughout her employment with Defendant, Plaintiff was misclassified as an independent contractor when, in fact, she was an "employee" and Defendant was her "employer"—as those terms are defined and interpreted under Oregon's wage and hour laws.

45. As a result of Plaintiff's misclassification, Defendant did not pay Plaintiff time-and-a-half wages when she worked more than 40 hours per week and did not pay Plaintiff <u>at all</u> for duties she performed outside of her grooming duties, including considerable time Plaintiff was required to spend cleaning Defendants' premises.

ERIC WILSON, P.C.
1 SW COLUMBIA STREET, SUITE 1850
PORTLAND, OR 9725
503.880.9372

46. As a result of Defendant's failure to compensate Plaintiff at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of forty hours per work week, Defendant violated Oregon law, including ORS Chapters 652 and 653.

47. As a result of Defendant's failure to compensate Plaintiff at all for work Plaintiff performed on Defendant's behalf outside of her grooming duties, Defendant violated Oregon law, including ORS Chapters 652 and 653.

48. Under Oregon law, Plaintiff is entitled to damages in the amount of her unpaid wages and unpaid overtime wages from March 1, 2017 through October 15, 2018, with said amount to be determined by a jury at the time of trial.

49. In addition, pursuant to ORS 652.150, because Defendant unlawfully failed to pay Plaintiff all of her earned wages within one day following the end of Plaintiff's employment, Defendant owes Plaintiff an additional Oregon penalty equal to the amount Plaintiff would have earned had she worked as an employee of Defendant at her regular hourly rate for eight hours per day, for thirty days following the termination of her employment—with said amount to be determined by a jury at the time of trial.

50. Plaintiff requests attorney's fees and costs associated with this claim pursuant to ORS 653.055 and ORS 652.200. Plaintiff presented a written demand for unpaid wages, Oregon penalty wages, and attorneys' fees to Defendant via a letter dated January 22, 2019. Defendant failed to tender any of the money owed to Plaintiff following its receipt of Plaintiff's written demand.

### THIRD CLAIM FOR RELIEF
### INJURED WORKER RETALIATION – ORS 659A.040 *et seq.*

51. Plaintiff restates and incorporates by reference paragraphs 1-28, as though fully set forth herein.

52. Plaintiff engaged in protected activity under ORS 659A.040 when she

notified Defendant of her on-the-job injury, requested that Defendant cover her injury under its workers' compensation policy, filed a workers' compensation claims and notified her employer that she had done so, took leave from work because of her on-the-job injury, and requested light-duty work because of her on-the-job injury.

53. Defendant, acting through its agents and/or employees, terminated Plaintiff in substantial part because Plaintiff invoked her rights under Oregon's workers' compensation system, in violation of ORS 659A.040, causing Plaintiff to suffer damages.

54. As a result of Defendant's violation of ORS 659A.040, Plaintiff suffered and continues to suffer a loss of earnings and loss of benefits, which continue to accrue. Therefore, Plaintiff requests an award of economic damages in an amount to be determined by a jury at the time of trial.

55. As a result of Defendant's violation of ORS 659A.040, Plaintiff suffered emotional distress in the form of humiliation, anxiety, depression, grief, worry, and fear, among other manifestations. Therefore, Plaintiff requests an award of compensatory damages in an amount to be determined by a jury at the time of trial.

56. Plaintiff seeks reasonable attorneys' fees and costs for this claim in an amount to be proven at trial pursuant to ORS 659A.885(1) and/or ORS 20.107.

### III.  JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims and issues to the extent allowed under the law.

### IV.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests the following judgments and relief according to proof:

1. Economic damages;

2. Non-economic damages;

3. Liquidated damages;

4. Oregon penalty wages;

5. Reasonable costs and attorney's fees per the statutes cited above;

6. For prejudgment and post-judgment interest as appropriate and allowed by law;

7. All such other relief as this Court may deem proper.

DATED this 6th day of March, 2019.

                              **ERIC WILSON, P.C.**

                By:   /s/ Eric D. Wilson
                      **Eric D. Wilson**, OSB #044556
                      ewilson@oregonemploymentlaw.com
                      Phone: 503.880.9372
                      Facsimile: 503.208.8026
                      Attorney for Plaintiff